IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LYDIA SOSA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-04-3893 |
| | § | |
| JO ANNE BARNHART, COMMISSIONER | § | |
| OF THE SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court[1] in this social security appeal is Defendant's Motion for Summary Judgment and Brief in Support (Document Nos. 11 & 12), and Plaintiff's cross Motion for Summary Judgment (Document No. 14).  Having considered the cross motions for summary judgment, the parties' additional briefing, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and this matter is REMANDED to the Commissioner for further proceedings.

## I.      Introduction

Plaintiff Lydia Sosa ("Sosa") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the

---

[1] On May 4, 2004, pursuant to the parties' request, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings.  *See* Document No. 13.

Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits.  Sosa contends that Administrative Law Judge's ("ALJ") decision is flawed because: (1) the ALJ failed to follow the dictates of the Appeals Council; and (2) substantial evidence does not support the ALJ's determination that her impairments do not meet or equal a listed impairment for purposes of presumptive disability.  The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision, and that the decision comports with applicable law and the Appeals Council's directives.

## II.    Administrative Proceedings

On July 26, 1996, Sosa applied for disability insurance benefits, claiming an inability to work, since July 17, 1994, as a result of a back injury. (Tr. 127-130).[2]  That application was given a protective filing date of July 15, 1996.  The Social Security Administration denied her application at the initial and reconsideration stages.  After that, Sosa requested a hearing before an ALJ.  The Social Security Administration granted her request and the ALJ, Philip R. Kline, held a hearing on April 3, 1998, and a supplemental hearing on January 7, 1999, at which Sosa's claims were considered *de novo*.  (Tr. 400-418; 457-474).  On March 24, 1999, the ALJ issued a decision finding Sosa not disabled.  (Tr. 62-73).

Sosa sought review of the ALJ's adverse decision with the Appeals Council.  The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in

---

[2] Mention is made throughout the administrative record that Sosa also filed an application for supplemental security income benefits.  That application, however, has not been included in the administrative record.

reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest.  20 C.F.R. § 404.970; 20 C.F.R. § 416.1470.  After considering Sosa's contentions in light of the applicable regulations and evidence, the Appeals Council, on January 25, 2001, vacated the hearing decision and remanded the matter to the ALJ for further proceedings.  (Tr. 82-83).   Following a hearing on June 19, 2001 (Tr. 419-439), the ALJ again, on August 16, 2001, issued a decision finding Sosa not disabled.  (Tr. 95-105).

Sosa again sought review of the ALJ's decision with the Appeals Council.  The Appeals Council, in an Order entered on October 18, 2002, again vacated the hearing decision and remanded the case to a different ALJ for further  proceedings. (Tr. 116-118).  That ALJ, Thomas G. Norman, held a hearing on February 10, 2003 (Tr. 475-491), and subsequent thereto, on March 27, 2003, issued his own decision finding Sosa not disabled.  (Tr. 363-369).   Sosa again sought review with the Appeals Council.   In a decision vacating the hearing decision and remanding the proceeding to the ALJ for a third time, the Appeals Council wrote:

> The Appeals Council grants the request for review under the substantial evidence provision of the Social Security Administration regulations (20 CFR 404.970 and 416.1470).  Under the authority of 20 CFR 404.977 and 416.1477, the Appeals Council vacates the hearing decision and remands this case to an Administrative Law Judge for resolution of the following issues:
>
> - The hearing decision contains insufficient evidence regarding the severity of the claimant's lumbar disc disorder. His [sic] treating orthopedist, Dr. Donald Lazarz, indicated on September 18, 1995 (Exhibit 5F, page 39), that the claimant's lumbar spine was unstable.  As cited by the Appeals Council in its Order dated October 18, 2002 (Exhibit 22B), the medical expert at the prior hearing testified that the record was unclear as to whether the claimant had an unstable spine and suggested that the claimant might be disabled if his [sic] spine was unstable.  The Appeals Council ordered that additional evidence concerning the claimant's possible unstable spine be obtained in order to

complete the record.  This was to include clarification from Dr. Lazarz and an orthopedic evaluation with appropriate x-rays of the spine.  This was not done.

• The hearing decision does not contain an evaluation of the treating source opinion of Dr. Lazarz in Exhibit 7F.  On April 1, 1998, Dr. Lazarz stated that the claimant had lumbar disc disease with lumbar instability and that this condition was disabling since July 17, 1994, the date of the injury.

• The hearing decision indicates, Finding 6, that the claimant's allegations regarding her limitations are not totally credible but does not address whether the claimant has an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms alleged and does not consider the following factors in evaluating the intensity, persistence and limiting effects of the alleged symptoms: objective medical evidence; medical opinions; daily activities; the location, duration, frequency and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of medication; treatment other than medication; and other measures used to relieve symptoms.  The claimant would be unable to concentrate and attend to tasks on a sustained basis or complete a full workday or workweek if her complaints were credible.

• The hearing decision indicates that the claimant has the residual functional capacity for work-related functions that equate to a maximum sustained capability for a wide range of light work, Finding 7, but the decision does not contain a function-by-function assessment of the claimant's ability to do work-related physical and mental activities and sufficient rationale with specific references to evidence of record in support of the assessed limitations.

Upon remand the Administrative Law Judge will:

• Obtain additional evidence concerning the claimant's degenerative disc disease in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913).  The additional evidence should included [sic] updated testing source records as well as clarification from Dr. Lazarz regarding his diagnosis of lumbar instability, a consultative orthopedic examination with lumbar x-rays and medical source statements about what the claimant can still do despite the impairment.

• Further evaluate the claimant's subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 404.1529 and 416.929) and Social Security Ruling 96-7p.

- Give further consideration to the claimant's maximum residual functional capacity during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the treating source opinion pursuant to the provisions of 20 CFR 404.1527 and 415.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinion and medical source statements about what the claimant can still do despite the impairment (20 CFR 404.1512 and 416.912). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating source.

- Obtain evidence from an orthopedic medical expert to clarify the nature and severity of the claimant's impairment (20 CFR 404.1527(f) and 416.927(f)).

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Rulings 83-12, 83-14 and 96-9p, and *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Title (DOT) and it's companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

(Tr. 383-385). ALJ Norman, following a hearing (Tr. 440-456), issued a decision on April 8, 2004, again finding Sosa not disabled. (Tr. 20-29). In so doing, the ALJ determined: (1) that Sosa had not engaged in any substantial gainful work since the alleged onset date of disability; (2) that she had severe impairments of degenerative disc disease and obesity; (3) that her impairments did not equal

the severity requirements of any listing; (4) that she no longer had the residual functional capacity to perform her past work; and (5) that she could perform a limited range of light work and was able to perform such jobs as cashier, small parts assembler, and shipping and receiving weigher.  Sosa's request for review of that decision by the Appeals Council was denied on August 13, 2004.  The ALJ's April 8, 2004 decision thus became final.

Sosa has filed a timely appeal of the ALJ's decision.  Both the Commissioner and Sosa have filed Motions for Summary Judgment (Document Nos. 11 & 14).  This appeal is now ripe for ruling.


**III.      Standard for Review of Agency Decision**

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g).  While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see*

*also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  Conflicts in the evidence are for the Commissioner to resolve.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.,* 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a `conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability.  *Johnson,* 864 F.2d at 344.  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony,* 954 F.2d at 293 (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1.     If the claimant is presently working, a finding of "not disabled" must be made;

2.     If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;

3.     If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4.     If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5.     If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999). If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the

claimant is or is not disabled, the evaluation ends. *Leggett,* 67 F.3d at 564.

Here, the ALJ determined, in his April 8, 2004 decision, that Sosa was not disabled at step five. In particular, the ALJ determined that Sosa was not presently working (step one); that Sosa's back problems and her obesity were severe impairments (step two); that Sosa's back problem and obesity, neither singly or in combination, met or equaled an impairment listed in Appendix 1 of the Regulations (step three); that Sosa was not capable of performing her past work (step four); and that Sosa's impairments did not prevent her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience and residual functional capacity (step five). In this appeal, the Court must determine whether substantial evidence supports that step five finding, and whether the ALJ used the correct legal standards in arriving at that conclusion, including, whether the ALJ fully and properly considered Sosa's back impairment within the parameters set forth by the Appeals Council, whether the ALJ fully developed the record, and whether the ALJ's step three finding – that Sosa did not meet or equal a listing – is supported by substantial evidence in the record. In this regard, Sosa maintains that the ALJ improperly disregarded and discounted substantial evidence in the record that establishes that she met a listing, and failed to obtain x-rays to determine whether she suffered from lumbar instability.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

V.      **Discussion**

A.  **Objective Medical Facts**

As is relevant to the issues raised in this appeal, the objective medical evidence shows that Sosa suffers from degenerative disc disease and obesity.  Sosa's back problems commenced in 1990, when she sustained a lumbar spine injury.  (Tr. 303, 394).  In 1991, Sosa underwent a lumbar laminectomy, from which she recovered well and returned to work. (Tr. 303, 358-358, 394).

In July 1994, Sosa re-injured her lumbar spine in a fall at work.  From January through March 1995, Sosa sought treatment for that back injury with Dr. Kenneth L. Fults.  In his initial evaluation, Dr. Fults found positive straight leg raising with Lasegue's sign on the right, difficulties in toe to toe and heel to heel walking with a degree of weakness noted on the right, a consistent pattern of pain of the L5 and possibly S1 nerve root to the right, and a slight strength deficit of the major muscle groups.  (Tr. 240).  Dr. Fults also made note of the results of an lumbar MRI, which revealed "abnormalities in disc space[,] [m]oderate to [sic] decrease signal intensities of the L4-L5[,] [and] . . . some chronic degenerative changes of the tickler facet at 4 and 5".  (Tr. 240).  Dr. Fults diagnosed Sosa with probable lumbar disc disruption syndrome, and possible recurrent herniation, and recommended that Sosa undergo epidural steroid injections.  (Tr. 240-241).  Sosa had the recommended epidural steroid injections, but they provided her little relief.

In September 1995, Sosa began treatment with Dr. Donald Lazarz, an orthopedic surgeon. At that time, Sosa "exhibited limitation of movement in forward flexion and lateral motion"; "limited reversal of the lumbar lordosis";  "straight leg raising [ ] negative to ninety degrees bilaterally"l and her knee and ankle reflexes were hypoactive.  (Tr. 303).  Her motor and power sensation, however, appeared to be intact.  (Tr. 303).  Dr. Lazarz diagnosed Sosa with "lumbar instability".  (Tr. 303).

From September 1995 through 1997, Dr. Lazarz treated Sosa conservatively with bracing, epidural steroid injections, medication, and exercise.  (Tr. 307).  In April 1998, however, Sosa elected, upon Dr. Lazarz' recommendation and the concurrence of Dr. Gary Freeman, who was seen for a second surgical opinion,[3] to undergo back surgery.  Prior to the surgery, however, Dr. Lazarz answered a "Medical Questionnaire" in which he related Sosa's diagnosis as "herniated nucleus pulposus & lumbar instability"; set forth the neurological findings that indicated the need for surgery as "absent right ankle reflex, loss of muscle with calf measurements being 14 ½ inches on right, 15 inches on left, positive straight leg raising signs, limited motion in forward flexion and lateral motion, and muscle spasms"; and listed the other symptoms which indicated a need for surgery as "continued low back pain with radiating pain & numbness into right lower extremity, limited activities in all she attempts, failed conservative measures with bracing, physical therapy, medications, therapeutic exercises". (Tr. 309-315).  Dr. Lazarz also noted that Sosa had had, since July 17, 1994, the following symptoms: pain, muscle spasms, limitation of motion in the spine, radiculopathy, motor loss, muscle weakness, and sensory and reflex loss.  (Tr. 311).  Dr. Lazarz determined that Sosa had, as of April 1, 1998, the residual functional capacity to walk one to two blocks, stand no more than a half an hour at a time, stand for a total of two hours in an eight hour period of time, sit for no more than a half an hour at a time, sit for a total of two hours in an eight hour period of time, and lift no more than ten pounds occasionally. (Tr. 312-314).

On April 7, 1998, Sosa underwent a re-exploration of the lumbar spine, a decompressive laminectomy at L4-5 right with total hemilaminectomy at L5-S1, diskectomy at L4-5 right, and

---

[3] On January 20, 1998, Dr. Freeman wrote:  "The diskal abnormality now, after three years, is probably producing clinical radiculopathy.  In my opinion, a diskectomy of both L4-5 and L5 on the right without fusion would be appropriate surgical management."  (Tr. 324-325).

foraminotomy at the L5 root foramen at L5-S1.  (Tr. 322).  In connection with the operative

procedures, Dr. Lazarz wrote:

> The findings were unusual.  This is a heavy weight person with 220 pounds, 4 feet 10
> inches.  A re-do exploration with regrowth of a bone into the spinal canal from the
> previous operation.  Some clarification needs to be done about the levels.  The patient
> has five or six lumbar vertebrae, depending upon the interpretation of the L1 vertebra.
> The recent radiologist has interpreted this as five lumbar vertebrae, at prior times, it
> was six lumbar vertebrae, and the previous operation was thought to be at L6-S1.
> This was really carried out at the old L5-S1 or the new L4-5 and the laminectomy,
> this time, under my direction, was carried out at the two lowest levels, regardless of
> their nomenclature.
>
> * * *
>
> The laminectomy carried out at the previous surgery at the new L4-5.  There was
> considerable scar formation and particularly bony ingrowth from the lamina.
> Decompression laminectomy was the most essential feature of this at this level and the
> decompression was carried out to the nerve root which could be seen.  The nerve root
> was then retracted toward the midline and the disk was exposed and injected with
> saline and the disk material removed from the new L4-5 disk obtaining three to four
> grams of material.
>
> Attention was next directed to the new L5 lamina and the total hemilaminectomy was
> carried out to follow the L5 root and the S1 root to their exit point.  The S1 root was
> more dorsal and L5 root was more ventral.  The decompression was carried out with
> ligamentum flavum removed and the foraminotomy was also carried out.  The nerve
> root was then thoroughly decompressed from its exit from the spinal cord.  The area
> was lavaged with antibiotic solution and wax was placed at the raw bones edges to
> retard bony overgrowth.

(Tr. 322-323).  Following the surgical procedures, Dr. Lazarz  diagnosed Sosa with a "[h]erniated

nucleus pulposus L4-5 right with nerve root impingement at L5-S1 into the foramen due to bony

overgrowth and scar tissue".  (Tr. 322).

Sosa's treatment following the April 1998 surgery is not well documented.  In follow-up visits

with Dr. Lazarz, Sosa continued to have low back pain, "weakness" in her back, "limited range of

motion," and muscle spasms.  (Tr. 341-343).  On June 22, 1999, Dr. Lazarz sent Sosa to the Heights

Therapy and Rehabilitation Center for a functional capacity evaluation.  The evaluator determined that Sosa was capable of performing work at the light physical demand level.  (Tr. 326).  In reviewing that assessment, Dr. Lazarz, in June 2000, wrote:

> I have reviewed the FCE report which indicated that she was capable of light duty and that she would benefit from job re-training with the Texas Rehab Commission.  She indicated that she had not heard from Texas Rehab.  She was advised to contact the TRC so that she can get re-training and be eligible for some type of gainful employment.

(Tr. 341).

There are no further progress notes from Dr. Lazarz in the administrative record.  In addition, the only medical records which post-date Dr. Lazarz' June 2, 2000, progress note, are two reports from consultative examinations of Sosa, the first conducted by Dr. Barry N. Hyman on July 18, 2000, and the second conducted by Dr. Bernard Z. Albina on October 28, 2003.  Dr. Hyman noted in his report that Sosa's x-rays showed degenerative changes,[4] and that Sosa was unable to ambulate without the assistance of a cane" and could not "bend, squat, or rise from a squatting position."  (Tr. 345).  In contrast Dr. Albina, in his October 2003, report found as follows:

> Examination of the lumbar spine showed healed scars from previous surgery with some moderate spasm noted in the paravertebral muscles in the lumbosacral area. Forward flexion of the spine was at 60 degrees and lateral bend at 25 degrees to the right and to the left.  Leg raising was normal bi-laterally in the sitting position.  Knee jerks were 1+ bi-laterally and ankle jerks were 1+ bi-laterally.  There was no evidence of motor atrophy in the lower extremities.  Sensory exam in the lower extremities showed hypoesthesia over the left fifth toe and over the right big toe.

---

[4] The x-rays of Sosa's lumbar spine revealed:

1.  Altered curvature, probably due to pain or spasm.
2.  Mild narrowing of the interspace at L4-L5 noted.
3.  No other specific finding.

(Tr. 346).

RADIOLOGIC FINDINGS: X-rays of the lumbar spine showed evidence of previous hemilaminectomy at L4-L5[;] some degenerative osteoarthritis and Grade I spondylolysis is noted at L4-L5.

FINAL IMPRESSION:   Post lumbar laminectomy syndrome and degenerative osteoarthritis of the lumbar spine. . . .

(Tr. 394-395).

A review of the objective medical evidence supports Sosa's claim that there is not substantial evidence in the record to support the ALJ's conclusion that she did not meet the listing for spinal disorders.  Under the current listing for spinal disorders, Listing 1.04, a claimant is presumed disabled if she meets the following criteria:

1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b.

Under the listing for spinal disorders in effect at the time Sosa filed her disability application, Listing 1.05C, a claimant was presumed disabled if she met the following, similar, but not identical, criteria:

1.05C.   Other vertebrogenic disorders (e.g., Herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months.  With both 1 and 2:

1.  Pain, muscle spasm, and significant limitation of motion in the spine; and

2.  Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.05C (2000).  ALJ Norman concluded, in his April 8, 2004, decision that "the claimant's examinations did not reveal the neurological deficits required for a finding of presumptive disability under sections 1.05C (old listing) or 1.04 (new listing), Appendix 1, Subpart P, Regulations No. 4."  (Tr. 22).  This conclusion, and the resultant determination that Sosa did not meet either the old listing or the new listing for spinal disorders, is not supported by the objective medical evidence in the record.  This is particularly true for the period of time from September 1995 to April 7, 1998.  The objective examination and diagnostic findings, coupled with Dr. Lazarz' particularized findings and conclusions from the April 7, 1998, surgery that Sosa had significant nerve root compression,  reflect that Sosa met, or at least arguably met, all elements of both listings for a period of at least twelve months between 1995 and April 7, 1998.   The ALJ's failure to consider the objective medical findings in connection with the entire period of claimed disability, as opposed to the period of time from June 1999 (following Sosa's surgery and the completion of a functional capacity assessment) through 2003, was error.  The objective medical evidence factor does not support the ALJ's decision, and the ALJ erred in failing to determine whether Sosa ever met the requirements of current Listing 1.04 or former Listing 1.05C, or could have otherwise been found disabled under the five step sequential process.  Upon this basis, the decision should be remanded to the ALJ for further proceedings, including a determination of whether

15

Sosa was, at any time during the period of claimed disability, disabled under either the applicable listings, or at any other step in the five step sequential process.

### B.  Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight."  *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Further, regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'"  *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

There are several medical opinions in the record, including the opinions of Sosa's treating physicians, the opinions of medical experts who reviewed Sosa's medical records, and the opinions of physicians who consultatively examined Sosa.  The ALJ, in his April 8, 2004, decision, relied almost exclusively on the opinion of Dr. Albina, an orthopedic specialist who conducted a consultative examination of Sosa on October 28, 2003.  Dr. Albina's written opinion following that examination was that Sosa had "[p]ost lumbar laminectomy syndrome and degenerative osteoarthritis of the lumbar spine." (Tr. 395).  In addition, in a "Medical Assessment of Ability to Do Work-Related Activities (Physical)", Dr. Albina opined that Sosa could lift up to 20 pounds occasionally and 10 pounds frequently, could walk about 6 hours in an 8 hour workday; could sit about 6 hours in an 8

16

hour workday; and could occasionally climb, balance, stoop, crouch, kneel, and crawl. (Tr. 396-397). Dr. Albina made no comment on, and expressed no opinion as to, whether Sosa suffered from lumbar instability. In addition, Dr. Albina made no comment on, and expressed no opinion as to Sosa's ability to engage in work related activities prior to his examination of her on October 28, 2003.

> In relying on the opinion of Dr. Albina, ALJ Norman wrote:

> Dr. Albina, an orthopedic surgeon, examined the claimant most recently, and he expressed the opinion that she could lift and carry 10 pounds frequently and 20 pounds occasionally, stand and walk about 6 hours in a workday, sit about 6 hours of a workday, and occasionally climb, balance, stoop, crouch, kneel, and crawl. The assessment of Dr, Albina is consistent with his clinical findings on examination of the claimant, the X-ray findings at that time, and the record considered as a whole.

(Tr. 25). While the ALJ's reliance on Dr. Albina's opinion may support a conclusion that Sosa was not disabled as of October 28, 2003, the date Dr. Albina examined her, Dr. Albina's opinion does not support the ALJ's conclusion that Sosa was not, at any time from the alleged onset of her disability in July 1994, though March 9, 2004, the date of the final administrative hearing, disabled. As set forth above, the ALJ had an obligation to (and had been instructed by the Appeals Council to) consider Sosa's "maximum residual functional capacity during the entire period at issue". While the ALJ discounted every opinion by every medical expert that would have supported a finding of disability at any point in time,[5] there is, upon this record, no expert medical opinion that *supports* the

---

[5] Of particular note is the opinion of Dr. Kendall Hamilton. Dr. Hamilton was initially called as a medical expert at the hearing before the ALJ on June 19, 2001. At that hearing, Dr. Hamilton testified, from his review of Sosa's medical records, that she would have been able to perform sedentary work up to the time of her back surgery in April 1998, and that thereafter, following time for recovery, would have been able to perform light work. (Tr. 424) Dr. Hamilton also testified that he could not say that Sosa met a listing because the necessary neurological findings were not consistently present. (Tr. 423). Dr. Hamilton, however, made note of the diagnoses in the record of lumbar instability, and testified that such a condition would be disabling. (Tr. 426-431). Upon review of additional medical records, Dr. Hamilton opined in a written "Medical Questionnaire" dated February 7, 2003, that Sosa had lumbar instability at

ALJ's opinion that Sosa was not, at any point from her onset date forward, disabled.  Therefore, the expert medical opinion factor also does not support the ALJ's decision, and the ALJ erred in failing to determine whether Sosa ever met the requirements of current Listing 1.04 or former Listing 1.05C, or could otherwise have been found disabled under the five step sequential process.

### C.  Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled.  *Cook,* 750 F.2d at 395.  The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides that allegations of pain do not constitute conclusive evidence of disability.  There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain.  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record.  42 U.S.C. § 423.  "Pain constitutes a disabling condition under the SSA only when it is `constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform.  *See Scott v. Shalala,* 30 F.3d 33, 35 (5th Cir. 1994).  The Act requires this Court's findings to be deferential.  The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the

---

L4-L5, as well as spinal stenosis at L4-L5, and that her condition was medically equivalent to former Listing 1.05C, and current Listing 1.04.  (Tr. 355-357).

opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

ALJ Norman found Sosa's complaints and subjective symptoms not entirely credible.  In so

doing, the ALJ Norman wrote:

> In reaching a conclusion regarding the claimant's residual functional capacity, her
> subjective complaints and testimony were taken into consideration and evaluated in
> accordance with sections 404.1529 and 416.929 of Social Security Regulations Nos.
> 4 and 16 (20 CFR 404.1529 and 416.929) which incorporate Social Security Rulings
> 88-13 (Cumulative Edition, 1988) and 90-1p (Cumulative Edition, 1990-1991),
> restated and clarified in Social Security Ruling 96-7p.  The claimant alleged disability
> due to back problems.  She was asked how her condition kept her from working, and
> she responded that she could not stand, sit, or walk for long periods (Exhibit 11E).
> The claimant stated that she could not go grocery shopping, do household chores, or
> cook, and her husband had to help her dress (Exhibits 2E, pages 1 and 5).  She
> subsequently was asked to describe an average day, and she stated that she cleaned
> her house by sweeping, mopping, washing dishes, and washing clothes.  However, she
> added that it took her almost all day to clean one room (Exhibit 10E).  The claimant's
> statements are somewhat conflicting, and they appear to be self-serving.

> * * *

> The claimant's earnings record documents low and sporadic earnings over the years,
> a factor that could suggest a lack of motivation to work.

> Due consideration has been given to credibility, motivation, the objective medical
> evidence and opinion, clinical and laboratory findings, diagnostic tests, the extent of
> medical treatment and relief from medication and therapy, the claimant's daily
> activities, the extent, frequency, and duration of symptoms, attempts to seek relief
> from symptoms, the claimant's earnings record, an all of the evidence of record
> considered as a whole.  The undersigned Judge finds that the claimant's subjective
> symptoms are of only a mild to moderate degree and tolerable for the level of work,
> residual functional capacity and work limitations as found herein, and the claimant's
> subjective complaints are found not to be fully credible but somewhat exaggerated.

(Tr. 25-26).  Credibility determinations, such as that made by the ALJ in this case in connection with

Sosa's subjective complaints of pain, are generally within the province of the ALJ to make.  *See*

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine

the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'")

(quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995). Because, however, the ALJ failed to consider at step three whether Sosa ever met the requirements of current Listing 1.04 or former Listing 1.05C, and because the ALJ's credibility determinations are most relevant at step-five, the ALJ's credibility has no bearing on whether this proceeding should be remanded.

### D.  Education, Work History and Age

The fourth element considered is the claimant's educational background, work history and present age.  A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(a).

Here, based on the determination that the ALJ erred by failing to consider whether Sosa *ever* met the requirements of current Listing 1.04 or former Listing 1.05C, or could have otherwise been found disabled under the five-step sequential process, this factor neither weighs in favor of or against the ALJ's decision.

### VI.      Conclusion and Order

Based on the foregoing, and the conclusion that ALJ Norman erred by failing to fully and properly consider whether Sosa was, at any time during the claimed period of disability, disabled under the five-step sequential process, it is

ORDERED that Plaintiff's Motion for Summary Judgment (Document No. 14) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 11) is DENIED, and this

case is REMANDED to the Commissioner for further proceedings, including a determination of whether Plaintiff was, at any time during the claimed period of disability, disabled under current Listing 1.04 or former Listing 1.05C, or was otherwise disabled under the five-step sequential process.

Signed at Houston, Texas, this 16th day of September,  2005.


Frances H. Stacy
United States Magistrate Judge

21